May it please the court, I am Andrea McKeown on behalf of the petitioner appellant Raymond Greppi. Mr. Oh, I would like to reserve two minutes, please. We're grateful for this opportunity to sharpen the lens by which you are viewing the medical evidence in this case. With a little attention to detail, you will find that the administrative law judge's hearing decision completely falls apart. Mr. Greppi has been diligently engaging in appropriate psychiatric care for the past decade to address the complex trauma that stems from ritualistic sexual violence he experienced over a period of years during his childhood and complicated by multiple severe head injuries, having left a visible scar on his forehead as reflected in the medical record. Despite reliable evidence of multiple significant areas of impairment, the ALJ determined a residual functional capacity that had only one non-exertional limitation, a frequent contact with supervisors, co-workers, and the general public. That decision is irrational and unsupportable. The judge erred and disregarded... Counsel, could you address what seems to be the crux of the ALJ decision is that the ALJ was rejecting the treating physician's testimony because it was inconsistent with the medical notes made by the treating physician. Could you address that? Sure. So, Dr. Montgomery supplied two pieces of opinion evidence, one in 2016 and one in 2017, as well as dozens of pages of progress notes. The progress notes are for use in the therapeutic setting for the purpose of the treatment itself. They are not designed to capture limitations as it relates to an individual's ability to work. In fact, that is why mental impairment questionnaires exist to capture those details. It wouldn't make sense for us to expect psychiatrists to fill out a five-page form related to employability after a therapy session. What's captured in the progress notes and what's contained in the two MIQs are internally consistent. I should note that the 2016 and 2017 MIQs are based on different rubrics. So, of course, the ratings are different because they have different categories in them. But if you look at what's actually contained in those opinions, it's consistent in his areas of limitations. And the progress notes are a combination of objective and subjective evidence. And Mr. Grippy describes himself sometimes with moderate, sometimes with severe limitations. It's entirely appropriate that his treating provider renders an opinion that finds him more impaired than he sees himself. In fact, consistently throughout the progress notes, Dr. McMurray notes that there is a limitation in Mr. Grippy's insight and judgment. So, because he's the treating physician, he should be given the most deference. And disregarding all of his opinions are unsupportable. And the ALJ doesn't even lay out what weight he gives Dr. Montgomery's opinion generally. He assigns little weight to the 2017 report specifically but he doesn't even address how much weight he's giving to the rest of the evidence in the record. But without fail, those progress notes do document anxiety and depression, reduced insight and judgment, and consistently document impaired concentration and attention. And I want to bring your attention to that, the concentration and attention, because the judge placed substantial weight solely on the opinion of Dr. Solomon, who was a non-examining physician who has never met Mr. Grippy and who rendered her opinion two and a half months after the claim was filed. She based her assessment on Dr. Montgomery's records and she made a fundamental error in interpreting those records. If you look on page 109 of the excerpts of Breckford, you will see that she claimed Dr. Montgomery assessed Mr. Grippy as having fair concentration. Right above her assessment is the analyst's assessment where she quotes Dr. Montgomery's opinion and what he says is, insight and judgment fair, semicolon, concentration and intention impaired. Dr. Solomon took that quote, fair, semicolon, concentration, and turned it into fair concentration. That is why the ALJ ultimately only gave a limitation in the area of interacting with others because Dr. Solomon misinterpreted the records and he didn't catch that error. So her opinion is unsupported by the record and his opinion is completely undermined. Did you raise that error before the ALJ? I inherited this case just before this hearing and heard this oral argument and so I just noticed it in the record but it's a foundational error and I don't think that, I think because all of the general arguments were raised, this falls under the umbrella of the arguments that have been raised. I would also like to discuss Dr. Abraham's report which the ALJ similarly undermined and disregarded because he thought there was an error but it was actually his interpretation that was an error. Dr. Abraham clearly states that, so the ALJ undermined it because he thought that she was under the impression that Mr. Greppi was still using hard drugs but she's very clear in her report, page 675 of the record, that she is recognizing that he's using a little alcohol and she's just cautioning that that is risky behavior in her professional opinion considering his longitudinal history of relapses. So she's not saying that she thinks that he's on meth, she's saying specifically what she believes he is doing and how she thinks that that is not social support system, he completely falls out. So there's a little caution in there but overall materiality is not an issue in this case and her opinion is not in conflict with that. The ALJ took such a superficial look at all of this that he rendered a decision entirely unsupportable. I believe that this case is appropriate to remand for payments and not for further proceedings. There are no conflicts and ambiguities, we just cleared up some what a satisfactory job. So do you concede that your client was using marijuana and alcohol? He has talked about occasional social use of alcohol and he has talked about occasional use of marijuana at times in this record. That is not a consistent issue in this record and his PTSD, his personality disorder, his depression, his anxiety, these all produce dramatic limitations that are not created by those substances and that's as I said materiality is indisputably not an issue in this case. Could you explain to me once more why it was improper for the ALJ to discredit Dr. Montgomery's opinion because in your view there was no inconsistency in between his opinion and notes? So as a treating provider over the course of the past decade his opinion is entitled to deference based on the multi-factor test and disregarding his opinion with no foundation really undermines the integrity of that test. He is a child and adult psychiatrist, he's an MD, this is his job, there is no accusation in the record that he is lying, that he's making up his client's symptoms. He's been engaging in cognitive behavioral therapy with Mr. Greffey, not routine conservative treatment as the commissioner alleges and to reject his opinion requires specific and legitimate reasons based on a detailed and thorough summary of the facts and evidence and that simply did not happen here. What does routine mean to you? What does routine mean to me? Yeah, what would a routine course of treatment be? I'm just not familiar with that. It's not a term I use, it's the term the commissioner used to discredit um this intensive therapy treatment that Mr. Greffey's been engaging in. I think it's a throwaway word, I think it's I think it's it is meaningless honestly. I'll add that Dr. Blank's opinion was also inexplicably not given any weight or we don't know how much weight because the judge didn't mention it but he too he found moderate limitations in emotional functioning and if you look closely at his report he moderate is defined as functionally disabling um and the other non-examining physician did cubis also found impairments so everybody in this record found impairments um and the ALJ relied on Dr. Solomon but um he he didn't understand that her opinion was flawed. You're down to about two minutes, do you want to reserve? Okay uh yeah I'll reserve, thank you. Ms. Feier? Good afternoon your honors, I'm Elizabeth Feier and I represent Tammy Saul, the commissioner of social security. Let me address that last point that my opponent made by the way that Dr. Blank found moderate limitations in emotional functioning that was disabling. If you look at page 463 in the record it says moderate limitations of functional satisfactory that's absolutely correct um and then um I understand that the oops sorry the um a major factor in this case is the what what we would say is the disconnect between Dr. Montgomery's treatment notes and the extreme limitations that he assessed on the two uh checkbox forms that he that he filled out and keep in mind here that Mr. Graffy is alleging that he has severe social anxiety to the point where he can't leave his house. He's saying that he has these uncontrollable anger issues that prevent him from working with other people and none of that shows up in those treatment records and there's a lot of those treatment records. The um the first part of where you hear Mr. Graffy's um complaints are labeled CC which means chief complaint and that's where you'll find the assertion of uh sadness mild to moderate to that is over the course of the years. That's where he also says um that his anxiety gets between mild and ends up being between moderate and severe. Those are his chief complaints. When you look at the MSD, the medical status examination, the findings are different and admittedly over the course of the years Dr. Montgomery says that the claimant is impaired in attention and concentration but he never defines that and then you have at the at the end the two doctors who examined the claimant last Dr. Dr. Abraham and then Dr. Blankfound no limitations at all in concentration and attention so that takes that that explains some of the disconnects that the agency has found between Dr. Montgomery's treatment records. Let me ask you while you're talking about Dr. that uh the ALJ rejected Dr. Abraham's opinion and just said see above. What does that mean? He said as I recall that he did the ALJ was just was not crediting Dr. Abraham's opinion for the same reasons that he was not crediting Dr. Montgomery's. I'm not sure that makes a lot of sense because he was essentially discrediting Dr. Montgomery because of Dr. Montgomery's treatment notes but those aren't really an issue with Dr. Abraham so can you explain to me what the ALJ was doing? I admit it's a little bit sloppy. My take on that is that he's talking about how there's all these treatment records from Dr. Montgomery that don't show extreme limitations and that that's an inconsistency with the record that would apply also to Dr. Abraham and as long as we're talking about Dr. Abraham if you look at her findings they're actually again he has she says he functions normal socially he he has no attention and concentration deficit he has she she says that he initially got angry with her and then if you're able to answer the question she also says he gives poor effort during his testing she says that he has results that are inconsistent with his clinical presentation she says that he lacks motivation she says he is manipulative in his behavior dramatic in his behavior and blames other people for his problems and that he he presents himself in exaggerated ways to get attention and sympathy so take all of that into the context then she also says that he his drug use is affecting his symptoms and on page 675 she actually says many of the mood symptoms he complains of experiencing including hostility tightened anxiety and social withdrawal could be affected by his use of these substances not abuse it's undisputed that he's admitting he's still using marijuana and alcohol so that does explain some of her limitations and then she also the rest is in this subjective presentation that he consistently makes about his his history first of all he doesn't have documentation of a closed head injury and when he does a ct scan during the course of one of his um hospitalizations that's before the alleged onset day and while he's still abusing methamphetamines the ct scan is normal and even dr abraham so the test for sequelae of a head injury and it's negative he doesn't have some kind of closed heading that's caused psychological problems that's just not supported by the record and the other thing that's not supported by the record is his allegations that he's left all of these jobs because he can't get along with people and i would like to in the beginning of the testimony he talked a lot about his past work and one of the things he says is that he was he was trained as an electrician which is the job he's had the longest by journeyman if you're being trained by journeyman you have to interact with them the job that he had as a hood cleaner which he also had for three years he said he left that job because it was physically demanding it was at night it involved too travel and it made him fragile that has nothing to do with interacting with people and that's if you go to so it's only what she says can i ask you we can we can always find inconsistencies and problems in in in records that have a lot of medical evidence in them but what i'm troubled here is that in this case the treating physician and both examining physicians appeared to conclude that he had real problems and the alj discredited rejected all of those and went with with a uh a consulting physician's opinion who was just looking at the records and had never met this fell i am not familiar with any case where the alj has rejected the treating physician and they had all of the examining physicians in favor of of someone who has never seen the um applicant and i'm just wondering do you have any cases where that has happened it seems quite odd i think you are the case that you when your most recent published social security all 9 50 f 3 11 41 yes um but but um going back to the lb didn't he didn't really accept any particular medical opinion in this record but if you look at it you have these streams from dr solomon found no severe all the way to dr montgomery who finds extreme limitations that really don't have any other supporting the record except for claiming health so an alj has to look at the record as a whole and what he came up with here is that claimant has some social problems but they they are not supported to the extreme level that he has alleged and i'm doing i i would say that i don't i don't think dr blank found particularly significant impairments but for the emotional moderate emotional limitation he found which we're we're arguing is accommodated with the frequent um only frequent contact with other people and if you look at in the rsc and if you look at play it's work history it really doesn't support that he's not able to interact with other people as if the there's no documentation i thought he hadn't worked since 2011 that is true um but since 2011 he's become clean and sober well for the most part he's not abusing meth anymore he's been undergoing treatment with dr montgomery where he's been on a very steady regimen of medication that he says at the hearing on page 72 the medications don't make me make me feel not horrible but they don't make me feel wahoo great so he's admitting that his medications have stabled him out and you know he doesn't feel great but you don't have to be able to feel great to go to work and the last and he did the job that he had in 2011 was arguably the most um intensive job he had that was the waste management job where he said he was operating a plant but he also tells very different stories about that case he he's in the record he says in a treatment record that he worked 8 to 4 30 then at the examination with dr abraham he says that job was 18 hours a day and then at the hearing he says it's 16 hours a day so there's a lot of inconsistency in the way he's describing his past work which i would i would argue to the court to take what he says about those jobs with a grain of salt and then the last job that he had was the one at test report his reason for quitting was because the females were jealous of his prowess at the job so i don't think we can say that this record objectively supports his allegations about why he can't work and let's look at why he said it's that that he has this uh anger disorder that makes him hard to deal with people he's never been diagnosed with an anger disorder and when he was at the even in his drug abusing state they said that his his um instance of of harming people of was very low i'll find that here where that light is but it's in one of the kaiser hospital records so then he also says he has these side effects that make him unable to work with heavy machinery drowsiness that's also not in the record anywhere the first time drowsiness shows up is on one of dr montgomery's check forms and then the other thing is his social phobia and we don't have he's he's proven himself capable of learning of the job by interacting with people he has council what are we to make of the alj's second hypothetical uh to the vocational expert on the rfc where the alj opine uh hypothesized that that the the claimant cannot can only occasionally respond to supervisors did that mean that the alj thought that it could only occasionally respond to supervisors no your honor that's in the course of a administrative hearing a lot of different hypothetical questions are posed to vocational experts they're the only one that matters is the that the alj ultimately finds is the rfc so you know there was a reason why the alj asked that question what was the reason why there what was the reason why and there had to have been a reason why because he's posing different different limitations that have been assessed throughout the record that that's that's a fact there are these different limitations by different sources throughout the record that doesn't mean the alj finds them the ultimately supported limitations so that's a very typical thing that alj's will do and if you'll notice claimant's attorneys often ask if someone just four days of work a week can they do any work or if someone can't work eight hours a day can they do any work and you know an alj is not going to find those supportive records so that's a very common uh fact situation so the um ultimately the alj and yes the decision could be more detailed that's always the case but the alj summarized all of the the um examinations summarized dr montgomery's records accurately and and i will add to those those records say that um claimant has fair insight and judgment and and my opponent used fair in in terms of doctors one of the state agency doctors um use statements so if fair means good in that context then it means good in the context insight and judgment so there's always you know he always has good um he's good with presentation he's um his aspects actually improve throughout the course of treatment it goes from flat to uh appropriate and he's he's got the you know good fund of knowledge so so given these extreme allegations that this claimant is making dr montgomery's treatment records just don't support you would think at some point he would explain an incident where he had some kind of social problems with me where he lost his temper but instead he takes part he goes to the store he's moved in with a woman during all of this i mean this is this record just doesn't support the three reasons the claimant said he can't work the social anxiety the anger outburst and the medication side of it so unless of any further questions we ask that you uphold the alj decision further questions all right thank you if the alj had not rejected all of the medical evidence he would have had no foundation to reject all of the witness testimony either um and the commissioner goes to great lengths to discredit mr greppy um and in her briefing suggests as does the alj that he made up the diagnosis of ptsd and i want to draw your attention to page 602 of the record in 2011 where kaiser is discussing his ptsd also ptsd is listed as the initial impairment on the initial application and it's listed as on the initial denial letter in um october of 2015 so before he even files this claim he's been through nine you'll see in the record different psychotropic medications he settled on a regimen of abilify clonopin um and one other but through his work with um dr montgomery his dosages increased um and he explains to in the kaiser records that once he stops using meth he finally is confronted with the feelings from what happened in his childhood and he's actively working through that for the first time in his life so he is in a protected environment he's in a supportive environment where he doesn't leave his house unless he takes a tranquilizer that is the only way he leaves his house that's what the clonopin is for and when in the 12.0 listing social security explains that the more support you need the more impaired you are so mr greppy found someone that loves him puts a roof over his head feeds him gives him his medications and he can paint in isolation that doesn't make him employable thank you very good thank you both for your arguments today and as mccune fear and we will take this matter under submission thank you very much
judges: Thomas, Schroeder, Bumatay